UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DAUDAH MAYANJA, ) ) Plaintiff, ) ) v. ) ) WELLPATH, et al., ) ) Defendants. ) ) | Civil Action No. 21-11770-FDS |

**MEMORANDUM AND ORDER ON**
**DEFENDANTS' MOTION TO DISMISS**

**SAYLOR, C.J.**

This is a dispute filed by Daudah Mayanja, a *pro se* plaintiff and former inmate at the Suffolk County Jail and House of Correction, concerning alleged delayed and inadequate medical treatment.[1] He has sued Wellpath, a provider of health-care services at the House of Correction, and Cindylou Lyons, the Health Services Administrator who processed his inmate grievance forms.[2] The complaint asserts claims under 42 U.S.C. § 1983.

Wellpath and Lyons have moved to dismiss the complaint for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion to dismiss will be granted.

---

[1] It appears that Mayanja was later transferred to the Massachusetts Treatment Center in Bridgewater, as reflected in his notice of change of address. (Docket No. 26).

[2] Nurse Ashley Monteiro was named as an additional defendant. The claims against her have been dismissed without prejudice for failure to effect proper service pursuant to Fed. R. Civ. P. 4. (*See* Docket No. 43).

I.      **Background**

    A.      **Factual Background**

The facts are set forth as alleged in the amended complaint and its attachments.[3]

At all times relevant to this dispute, Daudah Mayanja was a pretrial detainee in custody at the Suffolk County Jail and House of Correction (the "House of Correction"). (Compl. ¶ 3).

Wellpath is a health-care company that provides medical services at the House of Correction. (*Id.* ¶ 4). Cindylou Lyons is the Health Services Administrator who processed Mayanja's inmate grievance forms. (*See id.* ¶ 6).

Mayanja was booked in pretrial detention at the House of Correction on November 16, 2020. (*Id.* ¶ 9). According to the complaint, he thereafter "raised some concerns to the Medical Services Unit Staff" concerning a "high risk" of contracting hepatitis B and C due to unspecified housing conditions "in some of the cells/rooms." (*Id.* ¶ 10).

On August 15, 2021, Mayanja submitted a health services request seeking vaccination against hepatitis B and C, "if available." (Compl. Ex. 3). Two days later, a nurse responded, writing that "[w]e do not administer hep B vaccine here." (*Id.*).[4]

Mayanja then filed an inmate grievance form on September 13, 2021, in which he expressed concern about contracting hepatitis B or C because there were a "number[] of inmates" with those diseases "living together" and "using the same facilities." (Compl. Ex. 1). Later that day, Lyons responded, "We have scheduled you with Infectious disease to discuss your options."

---

[3] For motions to dismiss under Fed. R. Civ. P. 12(b)(6), courts are generally limited to "the complaint, documents attached to it, and documents expressly incorporated into it." *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 71-72 (1st Cir. 2014). Here, the amended complaint refers to exhibits that appear to have been attached only to the original complaint. For purposes of this motion, the Court will construe those exhibits as attached to the amended complaint.

[4] It appears that there is no vaccine for hepatitis C. *See* Hepatitis C, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/hepatitis/hcv/index.htm (last accessed July 5, 2023).

(Compl. Ex. 2). The complaint appears to allege that that meeting never took place. (*See* Compl. ¶ 14).

According to the complaint, on September 20, 2021, Mayanja was attacked and bitten by a fellow inmate who was infected with hepatitis C and HIV. (*Id.* ¶ 15). He was brought that day to the medical unit at the House of Correction for evaluation, and then to the emergency room at Boston Medical Center for treatment. (*Id.*). Medical providers at the hospital took a blood sample, which indicated that he was negative for hepatitis C and HIV, but positive for hepatitis B. (*Id.* ¶¶ 16-17). No hepatitis vaccine was administered, and he was advised that the disease's progression would be monitored before beginning treatment. (*Id.* ¶ 18). In addition, he was prescribed a 30-day treatment to prevent HIV infection. (*Id.* ¶ 16).

According to the complaint, there was a delay in receiving the preventative medication once Mayanja returned to the House of Correction. (*Id.* ¶ 19). On September 22, 2021, two days after the attack, he filed an inmate grievance form indicating that he had not received any doses of his medication since leaving the hospital. (*See id.*; Compl. Ex. 4). It appears that he resumed treatment at the House of Correction either that day or the next day. (*See* Compl. ¶ 19).

On September 29, 2021, Lyons responded to Mayanja's inmate grievance form, writing that "[y]ou have been educated by the Nurse, that you have been started on these medications for 30 days." (Compl. Ex. 5). According to the complaint, however, although he did resume taking the medication, he was not educated by a nurse concerning his treatment. (Compl. ¶¶ 19-20).

The complaint asserts that "[t]he refusal of [Lyons] to provide the . . . HIV treatment that was prescribed to the Plaintiff, constituted Deliberate Indifference to the Plaintiff's serious, life threatening needs, in violation of the Fourteenth Amendment right to Due Process." (*Id.* ¶ 25).

In addition, the complaint alleges that Wellpath has "a policy of restricting and/or

3

outright denying pretrial detainees . . . Hepatitis 'B' vaccines, constituting Deliberate Indifference to the Plaintiff's serious, life threatening medical needs in violation of the Fourteenth Amendment right to Due Process." (*Id.* ¶ 23). The complaint further alleges that as a result of defendants' "fail[ure] to provide needed medical treatment, [Mayanja] contracted Hepatitis 'B' (and possibly Hep. 'C') which remains untreated, after exposure on 9/20/2021." (*Id.* ¶ 26).

According to the complaint, defendants have "inflicted unnecessary and []wanton infliction of pain, and worry of [dying], including emotional suffering." (*Id.* ¶ 21).

**B.      Procedural Background**

On October 28, 2021, Mayanja filed a *pro se* complaint. On April 7, 2022, he filed an amended complaint. As amended, the complaint asserts claims under 42 U.S.C. § 1983. Mayanja seeks damages and a declaration that defendants violated his "Fourteenth Amendment Due Process right to medical care."

Wellpath and Lyons have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

**II.     Standard of Review**

To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). When determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give

4

the plaintiff the benefit of all reasonable inferences. *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

Where, as here, a motion to dismiss is filed against a *pro se* litigant, any document filed by the *pro se* party is "to be liberally construed," and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). However, while *pro se* complaints "are accorded 'an extra degree of solicitude' . . . even a *pro se* plaintiff is required 'to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Wright v. Town of Southbridge*, 2009 WL 415506, at *2 (D. Mass. Jan. 15, 2009) (quoting *Adams v. Stephenson*, 1997 WL 351633, at *1 (1st Cir. 1997) (per curiam)).

### III.    Analysis

As noted, the complaint asserts claims under 42 U.S.C. § 1983. Defendants have moved to dismiss the claims against them on the grounds that the complaint fails to adequately plead that Lyons acted with deliberate indifference concerning the HIV preventative treatment, or that Wellpath acted with deliberate indifference concerning hepatitis B. Each will be addressed in turn.

A.     <u>42 U.S.C. § 1983</u>

1.     **<u>Lyons</u>**

The complaint asserts a claim under § 1983 against Lyons for deliberate indifference to plaintiff's medical needs arising out of his potential exposure to HIV.[5] "[T]o succeed in an Eighth Amendment claim under section 1983 based on denied or inadequate medical care," a plaintiff must prove (1) an objectively serious medical need and (2) that the defendant exhibited "deliberate indifference" to the prisoner's needs. *Lopes v. Riendeau*, 177 F. Supp. 3d 634, 657 (D. Mass. 2016) (citing *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014)).[6]

"[A] medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Leavitt v. Correctional Med. Servs., Inc.*, 645 F.3d 484, 497 (1st Cir. 2011) (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)). "The 'seriousness' of an inmate's needs may also be determined by reference to the effect of the delay of treatment." *Id.* at 497-98 (quoting *Gaudreault*, 923 F.2d at 208). The inquiry "contemplates 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Abernathy v. Anderson*, 984 F.3d 1, 8-9 (1st Cir. 2020) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

---

[5] At the outset, it appears that Lyons is an employee of Wellpath, raising the question of whether § 1983 properly applies to her. A § 1983 claim requires that "the conduct complained of transpired under color of state law," which is "the functional equivalent of the Fourteenth Amendment's 'state action' requirement." *Santiago v. Puerto Rico*, 655 F.3d 61, 68 (1st Cir. 2011). For present purposes, the Court will assume that as an employee of a private contractor providing medical services in a jail, Lyons was acting under color of state law. *See Brison v. Wellpath, LLC*, 2023 WL 2495729, at *2-5 (D. Mass. Mar. 14, 2023) (denying motion to dismiss § 1983 claim against Wellpath health-services administrator).

[6] "Pretrial detainees are protected under the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment; however, the standard to be applied is the same as that used in Eighth Amendment cases." *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 7 (1st Cir. 2002); *see also Leavitt v. Correctional Med. Servs., Inc.*, 645 F.3d 484, 497 n.21 (1st Cir. 2011) (same).

Here, the claimed objectively serious medical need is plaintiff's need to take prophylactic medication for 30 days after being bitten by an HIV-positive inmate. Defendants assume, without conceding, and the Court agrees, that plaintiff's potential exposure to HIV qualifies as a serious medical need.

The complaint must also set forth sufficient facts, however, that Lyons was deliberately indifferent to his medical needs. "Deliberate indifference" requires that the defendant be subjectively "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [she] must also draw the inference." *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Mere medical negligence will not support a § 1983 claim. "[R]ather, the treatment provided must have been so inadequate as 'to constitute "an unnecessary and wanton infliction of pain" . . . .'" *Lopes*, 177 F. Supp. 3d at 658 (quoting *Leavitt*, 645 F.3d at 497). "Deliberate indifference . . . may be shown by the denial of needed care as punishment and by decisions about medical care made recklessly with 'actual knowledge of impending harm, easily preventable.'" *Ruiz-Rosa v. Rullan*, 485 F.3d 150, 156 (1st Cir. 2007) (quoting *Feeney v. Correctional Med. Servs., Inc.*, 464 F.3d 158, 162 (1st Cir. 2006)).

According to the complaint, plaintiff was brought to the emergency room at Boston Medical Center and prescribed prophylactic treatment on September 20, 2021, the same day that he was attacked. (Compl. ¶¶ 15-16). The complaint asserts that two days then passed between when he took his first dose of the medication at the hospital and when he was able to continue his prescribed medication regimen at the House of Correction. (*See id.* ¶ 19).[7] In addition, the

---

[7] As noted, it appears from the complaint that plaintiff filed an inmate grievance form on September 22, 2021, and that he resumed treatment either that day or the next day. (*See* Compl. ¶ 19 (citing Compl. Ex. 4)).

complaint alleges that Lyons incorrectly reported in her September 29, 2021 inmate grievance response that a nurse had "educated" him "regarding [his] treatment." (*Id.* ¶ 20 (citing Compl. Ex. 5)). The complaint does not, however, allege that she incorrectly reported that he was receiving the prophylactic medication at the time. (*See id.*).

Such allegations do not rise to the level of "wanton" decisions to delay care necessary to establish deliberate indifference. *See Leavitt*, 645 F.3d at 498 ("[C]arelessness or inadvertence falls short of the Eighth Amendment standard of deliberate indifference."); *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993) (affirming dismissal of "what [was] in essence a claim of negligence" because "nothing suggest[ed] that the medical judgment was absurd or that improper reasons were given for refusing treatment"); *Feliciano-Hernandez v. Pereira-Castillo*, 663 F.3d 527, 534 (1st Cir. 2011) (finding conclusory allegations of deliberate indifference insufficient to establish claim). The complaint also does not contain any factual allegations to show that Lyons had a "sufficiently culpable state of mind, namely one of 'deliberate indifference' to [the] inmate's health or safety." *Burrell*, 307 F.3d at 8.

Accordingly, the motion to dismiss will be granted to the extent it seeks dismissal of the § 1983 claim against Lyons.

### 2. **Wellpath**

The complaint also asserts a claim under § 1983 against Wellpath for its alleged "policy of restricting and/or outright denying pretrial detainees . . . Hepatitis 'B' vaccines." (Compl. ¶ 23).

A threshold issue is whether the statute properly applies to Wellpath, which is a private company working as a contractor. While the First Circuit has never explicitly held that a private entity such as Wellpath should be treated as a municipality for purposes of § 1983, *see Leavitt*, 645 F.3d at 504 n.30, other district courts in this Circuit have imposed the requirements of a

*Monell* claim on such entities. *See Witham v. Corizon, Inc.*, 2012 WL 5267657, at *7 n.4 (D. Me. Sept. 17, 2012) ("Courts of Appeals in other circuits have expressly concluded that when private entities contract to provide jail inmates with medical services they are performing a function that is traditionally reserved to the state and that because they provide services that are municipal in nature they are functionally equivalent to a municipality for purposes of 42 U.S.C. § 1983 suits."); *Sosa v. Massachusetts Department of Correction*, 2019 WL 3557701, at *6 (D. Mass. Aug. 2, 2019) (applying *Monell* to private contracted prison medical services provider). Accordingly, the Court will assume that Wellpath is a municipality for purposes of § 1983.

To prevail on a theory of municipal liability against Wellpath, plaintiff must show that "the municipality *itself* causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original); *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691 (1978). Therefore, plaintiff must show both the existence of a policy or custom and a direct causal link between that policy and the alleged constitutional deprivation. *City of Canton*, 489 U.S. at 385.

As relevant here, a prisoner may allege a constitutional violation where "prison officials have, with deliberate indifference, exposed him to a serious, communicable disease that poses an unreasonable risk of serious damage to the prisoner's future health." *See Myrick v. State of New Hampshire*, 2006 WL 1424331, at *2 (D.N.H. May 18, 2006) (citing *Helling v. McKinney*, 509 U.S. 25, 33-35 (1993)). As noted, the "deliberate indifference" standard requires that a prison official disregarded an excessive risk to the prisoner's health. *See Farmer*, 511 U.S. at 837 ("[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

9

he must also draw the inference.").[8]

Here, the complaint asserts that the conditions in some of the cells and rooms created a "high risk" of catching hepatitis B and C, and that plaintiff did in fact contract hepatitis B while at the House of Correction. (Compl. ¶¶ 10, 26). While the complaint does allege that inmates with hepatitis were "living together" and "using the same facilities," it does not plausibly allege how that placed him at substantial risk of contracting hepatitis, or that any Wellpath employee was aware of, and disregarded, such a risk. *Compare Hottle v. George W. Hill Corr. Facility*, 2019 WL 4305803, at *3 (E.D. Pa. Sept. 11, 2019) ("Although [the inmate] alleges the conditions caused her to contract Hepatitis B, and thus provides plausibility that some condition posed an excessive risk to her health, she has not identified with any plausibility which conditions caused her infection."), *and Wright v. Scott*, 2001 WL 1751450, at *1 (5th Cir. 2001) (per curiam) (affirming dismissal of complaint as frivolous where it alleged that prisoner "was housed in a dormitory with inmates who had infectious diseases, including Hepatitis B," and that "he contracted the disease," because he "ha[d] not demonstrated deliberate indifference in conjunction with his claims that the defendants refused to give him a Hepatitis B vaccination"), *with Helling*, 509 U.S. at 33 (noting that "the Eighth Amendment required a remedy" where "inmates in punitive isolation," including those with hepatitis, were "crowded into cells"), *and Patel v. County of Orange*, 2019 WL 4238875, at *5-6 (C.D. Cal. June 19, 2019) (complaint stated Eighth Amendment claim where it alleged that plaintiffs who were forced to clean bloody cell where inmate committed suicide were "expos[ed] to bloodborne pathogens without proper protective equipment," and that jail officials "saw blood splatter on [p]laintiffs" but failed to

---

[8] "Whether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate indifference' standard . . . ." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (alteration in original).

provide follow-up care).[9]

In sum, the complaint does not plausibly allege that any Wellpath employee was aware of, and disregarded, an excessive risk to his health. Accordingly, "[w]here, as here, there is no constitutional violation by the employees of the municipality, there can be no liability predicated on municipal policy or custom." *Leavitt*, 645 F.3d at 504.

The motion to dismiss will therefore be granted to the extent it seeks dismissal of the § 1983 claim against Wellpath.

## IV.   Conclusion

For the foregoing reasons, defendants' motion to dismiss for failure to state a claim is GRANTED.

**So Ordered.**

Dated:  July 7, 2023

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court

---

[9] To the extent the complaint asserts that plaintiff contracted hepatitis B when a fellow inmate bit him, that inmate allegedly had hepatitis C, not hepatitis B, and thus the complaint does not plausibly allege that he contracted hepatitis B during the assault.  (*See* Compl. ¶ 15).